**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VITO CORTESE,<br>        Plaintiff, | No. 3:22-cv-408 (SRU) |
| v. | |
| WALMART STORES EAST, L.P., et. al.,<br>        Defendants. | |

**RULING ON WAL-MART STORES EAST, L.P. AND EAST WINDSOR PROPERTIES,
L.P.'S, MOTION FOR SUMMARY JUDGMENT**

This case arises out of an injury sustained by the plaintiff, Vito Cortese ("Cortese"), when

his shopping carriage fell into a pothole in the parking lot of a shopping center located on

Prospect Hill Road in East Windsor, Connecticut. Cortese brings four identical premises liability

claims against Wal-Mart Stores East, L.P. ("Walmart"), East Windsor Properties, L.P. ("East

Windsor"), Big Y Foods, Inc. ("Big Y"), and Prospect Hill Properties, L.P. ("Prospect Hill").

Walmart and East Windsor have moved for summary judgment, alleging that they did not have

possession and control over the property where the pothole was located, and therefore cannot be

liable to Cortese. For the reasons that follow, Walmart and East Windsor's motion for summary

judgment is **granted**.

**I.    Background**

On February 16, 2022, Cortese filed suit in state court, alleging that he was injured on

March 14, 2020 in a parking lot at 67-69 Prospect Hill Road in East Windsor, Connecticut when

his shopping cart fell into a pothole, striking his left knee and causing a tear of his meniscus. *See*

Compl., Doc. No. 1. Cortese asserts four identical causes of action against four parties that he

alleges each "owned, leased, rented, controlled, possessed, operated, managed, and/or

maintained" the premises: Walmart, East Windsor, Big Y, and Prospect Hill. Walmart removed

the case to federal court on March 19, 2022, asserting diversity jurisdiction. *See* Def's Notice of Removal, Doc. No. 1.

The parking lot where the plaintiff's injury took place was in a shopping center that spanned two addresses: 67 and 69 Prospect Hill Road in East Windsor. *See* Walmart & East Windsor's Rule 56(a)(1) Statement, Doc. No. 30, at ¶ 9-10. At the time of the injury, 69 Prospect Hill Road was owned by East Windsor and leased to Walmart, and 67 Prospect Hill Road was owned by Prospect Hill and leased to Big Y. *See* Walmart Ground Lease, Exhibit 1, Doc. No. 30-1; Prospect Hill Lease, Exhibit 2a, Doc. No. 30-3. In addition, East Windsor and Prospect Hill had entered into an agreement in 1995 titled "Easements with Covenants and Restrictions Affecting Land" (the "ECR"). *See* ECR, Exhibit 2a, Doc. No. 30-3, at 54-65.

The ECR contemplated that the two properties would be developed in conjunction with one another as a commercial shopping center. *Id.* The ECR granted to each party a non-exclusive easement over the common areas of the other party's parcel of land, for use as a shared parking lot. *Id.* at 55-56:

5.   Common Areas.

  a.   Grant of Easements. Each party, as grantor, hereby grants to the other party, as grantee, and to the agents, customers, invitees, licensees, tenants and employees of grantee, a nonexclusive easement over, through and around the Common Areas of their respective tracts for roadways, walkways, ingress and egress, parking of motor vehicles, loading and unloading of commercial and other vehicles, and the use of facilities installed for the comfort and convenience of customers, invitees, licensees, tenants and employees of all businesses and occupants of the buildings constructed on the Building Areas defined above. Each party, as grantor, hereby further grants to the other party, as grantee, and to the agents, customers, invitees, licensees, tenants and employees of

> grantee, nonexclusive easements in the locations shown on the Plan for the purposes indicated on the Plan, including, without limitation, the installation of access roadways and drainage, sewer, water and other utility facilities, pipes, conduits and lines.

Finally, the ECR outlined the parties' obligations for maintenance of the common areas of the shopping center, stating that "the parties hereto shall maintain the Common Areas in good condition and repair" and that the "respective owners shall pay the maintenance expense of their tracts." *Id.* at 58-59.

On December 12, 2022, the parties conducted a site visit, accompanied by an expert land surveyor Alan Bongiovanni, to determine the location of the pothole that caused the plaintiff's injury. *See* Doc. No. 30, at ¶¶ 15-16. During the course of that visit the plaintiff identified the location of the pothole, and Mr. Bongiovanni then concluded that the area containing the pothole was entirely on the parcel owned by Prospect Hill and leased to Big Y. *Id.* at ¶¶ 20-21. Despite the fact that Cortese had parked his car and sustained his injury near the front of the Walmart store, which at the time of the incident had since closed, it is undisputed that the location identified by Cortese as the site of the pothole was on the parcel owned by Prospect Hill and leased to Big Y. *See* Opp'n., Doc. No. 37, at 6 ("Big Y does not currently dispute that the Site Plan describing the Big Y Parcel depicts certain portions of Common Area that extend directly in front of the Walmart Building Area, yet forms the parcel leased to Big Y.").

On June 13, 2023, Walmart and East Windsor filed the instant motion for summary judgment, doc. no. 28. The motion is opposed by both Cortese, *see* doc. no. 38, and co-defendants Prospect Hill and Big Y. *See* Doc. No. 37.

**II.     Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must

present affirmative evidence to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the

light most favorable to the nonmoving party and must resolve all ambiguities and draw all

reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d

Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the

nonmoving party"). When a motion for summary judgment is properly supported by

documentary and testimonial evidence, however, the nonmoving party may not rest upon the

mere allegations or denials of the pleadings but must present sufficient probative evidence to

establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

 "Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also*

*Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving

party submits evidence that is "merely colorable," or is not "significantly probative," summary

judgment may be granted. *Anderson*, 477 U.S. at 249-50.

 The mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact. Regarding materiality, the substantive law will identify which

facts are material. Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted. *Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## III.   Discussion

Cortese's negligence claims against each defendant sound in premises liability. It is well established that, under the law of premises liability, a defendant's "possession and control" of the land subjects that defendant to liability to persons injured on the land. *See Lin v. Nat'l R.R. Passenger Corp.,* 277 Conn. 1, 20 (2006). *See also Morin v. Bell Ct. Condo. Ass'n, Inc.,* 223 Conn. 323, 327 (1992) ("A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe."). Pointing to the seemingly undisputed fact that Cortese's injury occurred in an area of the shared parking lot in front of the closed Walmart store that was owned by Prospect Hill and leased to Big Y, Walmart and East Windsor argue that they are entitled to summary judgment in their favor because they had no

possession or control over the premises and therefore owed no duty to Cortese. *See* Mem. in Support of Mot., Doc. No. 29, at 6-7.

However, under Connecticut law, "possession and control" is not limited to ownership. "One who asserts and maintains control of property may be liable for defective conditions existing thereon, though he has in fact no title to it." *Thelin v. Downs*, 109 Conn. 662, 664 (1929). *See also Rosa v. American Oil Co.*, 129 Conn. 585, 589 (1943) ("it is upon control and possession of the premises, as distinguished from title, that a defendant's liability is predicated in [a premises liability] case"). Expanding on the meaning of the terms "possession" and "control", Connecticut courts have explained that "the word 'control' has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee," *Doty v. Shawmut Bank*, 58 Conn. App. 427, 432 (2000), and "possession cannot be fairly construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession." *Hancock v. Finch*, 126 Conn. 121, 123 (1939). Moreover, a defendant need not have exclusive possession in order to have control and possession for the purposes of establishing a duty of care. *See Lin*, 277 Conn. at 16 n.10. Prospect Hill and Big Y therefore oppose summary judgment on the grounds that, despite lacking an ownership or leasehold interest in the shared premises where the plaintiff's injury occurred, Walmart and East Windsor had the right to, and did, exercise possession and control over that area of the shared premises pursuant to the ECR, creating a genuine dispute of material fact as to which defendant(s) owed a duty to Cortese. *See* Opp'n., Doc. No. 37, at 10-14.

A non-exclusive easement over a piece of land, though, much like legal title, is also inconclusive evidence of "possession and control" over that land. *See, e.g., Sellick v. Hall,* 47

6

Conn. 260, 271-72 (Conn. 1879) (concluding that one party's "right to a mere easement, involving no presumptive possession" of the property in question was insufficient establish possession and control, and "[t]he question thus becomes one of actual possession and control, and thus a question for the jury."). Actions taken to a piece of land—such as the maintenance activities that Prospect Hill and Big Y allege Walmart undertook on the relevant area of the property—can serve as additional evidence of whether the actor had possession and control over the land. *See* Doc. No. 37, at 7, 13 (Alleging that the area where the plaintiff was injured "had been maintained, which maintenance included paving, sweeping, snow and ice removal, and paintings of markings and lines" and that "Big Y has submitted evidence revealing that for a period of many years leading up to the Plaintiff's incident, Walmart, and not Big Y Foods or Prospect Hill, undertook to maintain [that area]"); *Schlierf v. Abercrombie & Kent, Inc*., 2012 WL 3089387, at *2 (Conn. Super. Ct. July 2, 2012) ("[I]n determining whether a defendant 'controls' the premises where the injury occurred, our juries are instructed that they may consider such things as: acts of maintenance, such as fixing, repairing, cleaning, painting, performing upkeep."). However, the relevance of those actions must also be considered in the context of the actual rights and obligations granted under the ECR. The Second Circuit in *Sutera v. Go Jokir, Inc.* collected cases from other jurisdictions that held that the owner of an easement can be held liable for injuries to third parties on the subject property if "in light of the rights granted under the easement, as well as the activities undertaken pursuant to those rights[,] the dominant owner has sufficient control to warrant treatment as a landowner for tort purposes." 86 F.3d 298, 305 (2d Cir. 1996).

The "control" test for premises liability that the Second Circuit described in *Sutera* led that court to conclude that, under New York law, when a property is subject to a non-exclusive

easement and both the dominant and servient owners exercise their rights to use and maintain the

property, both owners owe a duty to third parties and may be held jointly liable. *Id.* at 306

("Because defendant exercised its rights and had the authority to ensure that the common areas

were well-maintained, this case is similar to *Cesario,* [in which] . . . both defendants owed the

duty of a landowner."). Relying on *Sutera* and two Connecticut Superior Court decisions that

held, respectively, that the owner of a servient estate and the owner of a dominant estate may be

held liable for injuries to third parties, Big Y and Prospect Hill argue that the defendants in this

case may be held jointly liable to Cortese and therefore the claims against Walmart and East

Windsor should proceed. *See generally* Supp. Br. of Big Y and Prospect Hill, Doc. No. 45 (citing

*Fabi v. Firm, LLC*, 2011 WL 803103 (Conn. Super. Ct. Jan. 28, 2011), and *McMellon v. Ball &*

*Socket Liquidating Tr. Inc*., 2001 WL 477286 (Conn. Super. Ct. Apr. 20, 2001)). As the Superior

Court conceded in *Fabi*, "[n]either the Appellate Court nor the Supreme Court has clarified the

manner in which our law of premises liability is applied in relation to the owner of a servient

estate when a third party is injured upon an easement." 2011 WL 803103, at *3. The same lack

of clarity from higher Connecticut courts exists regarding the obligations of the owner of a

dominant estate under Connecticut law.

But those two Connecticut Superior Court cases, read together, endorse *Sutera*'s

conclusion that the question of whether the owner of an easement or the owner of a servient

estate owes a duty of care to third parties is not answered through a rigid test, but depends on the

rights and obligations conferred by the agreement creating the easement and the actions taken by

each party. They do not, however, stand for the proposition that *Sutera*'s approval of joint and

several liability in premises liability cases applies under Connecticut law. Connecticut abolished

joint and several liability in 1986. Conn. Gen. Stat. § 52-572h(c) ("In a negligence action to

recover damages resulting from personal injury . . . each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages."). *Sutera*, in contrast, arises under New York law, where joint and several liability does apply to negligence claims. *See* CPLR § 1601(1) (New York's modified joint and several liability statute). The court in *Sutera* also cites to cases from other jurisdictions that have adopted a similar "control" test for premises liability cases that allows an easement holder and servient estate owner to be jointly liable to third parties, again all from jurisdictions that seemingly permit joint and several liability. *Sutera*, 86 F.3d at 305 (collecting cases); Restatement (Third) of Torts: Apportionment Liab. § 17 (2000) (table of states' joint and several liability laws). Finally, Connecticut law also does not allow the apportionment of liability amongst multiple tortfeasors in premises liability cases, because the property owner has a non-delegable duty to inspect and maintain the property. *See Smith v. Town of Greenwich,* 278 Conn. 428, 456 (2006).

*Sutera's* "control" test, therefore, is persuasive, but I must also take into account that, under Connecticut law, a dominant and servient estate cannot *both* be held liable for an injury to a third party on a property subject to an easement, either through joint and several liability or through apportionment of liability. It therefore would be nonsensical to conclude that a dominant and servient estate can both concurrently have possession and control over the property for purposes of liability for injury to third parties. As stated previously, the Connecticut Supreme Court does not require a party to have exclusive *possession* of a property in order to be a proper defendant in a premises liability case, that party need only be "in control of the property." *Lin*, 277 Conn. at 16 n.10; *Gazo v. City of Stamford*, 255 Conn. 245, 249 (2001). But the absence of any basis to jointly hold multiple tortfeasors liable in a single premises liability case compels the

conclusion that *control* must be exclusive under Connecticut law. Therefore, if in another case the proper showing of "control" was made, it seems entirely possible that an easement holder may be held liable to third parties for injuries occurring on that easement. However, considering the rights and duties conferred under the ECR and the undisputed actions taken by each of the defendants in this case, no reasonable jury could conclude in this case that Walmart and East Windsor exercised control over the property on which Cortese's injury occurred, to the exclusion of Big Y and Prospect Hill.

Though stating that "the parties hereto shall maintain the Common Areas," potentially signaling a collective responsibility, the ECR assigns to each party the duty to pay the maintenance expenses, lighting expenses, taxes, and insurance costs of the tract of the Common Area that it owns. *See* ECR, Exhibit 2a, Doc. No. 30-3, at §§ 6(b)-(c), 8(b). The ECR also permits each party to make alterations only to its own tract. *Id.* at § 6(d). Finally, under the ECR each party agrees to indemnify the other against claims arising from injury on its own respective tract. *Id.* at § 8(a). Those provisions all indicate that, under the terms of the agreement between the defendants, Prospect Hill and Big Y retained the right and obligation to control the portion of the Common Area that they own and lease. In fact, Prospect Hill and Big Y admit that they had a duty to maintain their own parcel. *See* Doc. No. 36, at ¶ 23. Moreover, even drawing all reasonable inferences in favor of Prospect Hill and Big Y, and therefore assuming that Walmart did, in fact, pave, sweep, remove snow and ice, and paint markings on the area of the parking lot where Cortese was injured, and did order a subsequent repair of the pothole, *see* doc. no. 36, at 11-12 ¶¶ 19-26, those basic maintenance acts would not be enough demonstrate that Walmart, as opposed to Prospect Hill and Big Y, exercised the power to "manage, superintend, direct, or oversee" the area of the parking lot as required under Connecticut law to demonstrate control,

when compared to the obligations conferred under the ECR. *Cf. Colon v. Metro-N. Commuter R.R. Co.*, 242 F. Supp. 3d 65, 76-77 (D. Conn. 2017), *aff'd*, 778 F. App'x 7 (2d Cir. 2019) (holding that a reasonable jury could conclude that the MTA had control over a portion of railroad tracks where a plaintiff was injured, based on the MTA's considerable police presence along the railroad and its ownership of Metro-North, which controls the railroad right-of-way).

Therefore, because there is no dispute that Cortese's injury occurred on the portion of the Common Area that was in the possession and control of Big Y and Prospect Hill, summary judgment is appropriate in favor of East Windsor and Walmart. Should Big Y seek to recover against East Windsor or Walmart on account of its belief that Walmart, and not Big Y, is directly responsible for the defective pothole that caused Cortese's injury, its remedy lies in indemnity. *See Preferred Acc. Ins. Co. of N. Y. v. Musante, Berman & Steinberg Co.,* 133 Conn. 536, 542 (1947) (holding that, where one party was actively negligent and the other was passively negligent, meaning that their negligence constituted the violation of a positive duty, the latter has a cause of action against the former for indemnity). As noted above, the ECR's indemnity provision requires each party to indemnify the other for claims arising out of injury occurring on its own tract, *see* exhibit 2a, doc. no. 30-3, at § 8, perhaps preventing Big Y from asserting any contractual right of indemnity against Walmart. However, Big Y may choose to assert a common-law indemnity claim against Walmart. *See Skuzinski v. Bouchard Fuels, Inc.,* 240 Conn. 694, 698 (1997) (reciting the elements of a common-law indemnity claim). Those considerations, however, are of no import to the resolution of the instant motion for summary judgment, because no claim for indemnity has yet been asserted.

**IV.    Conclusion**

For the reasons described herein, Walmart and East Windsor's motion for summary judgment, doc. no. 28, is **granted**. The clerk is directed to terminate Wal-Mart Stores East, L.P., and East Windsor Properties, L.P. as parties to this action.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of March 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge